UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MESCHELE DARDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14CV1198 RLW |
| ) | |
| AT&T CORP., et al., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 35). The motion is fully briefed and ready for disposition. Upon review of the motion and related documents, the Court finds that summary judgment in favor of the Defendants is appropriate.

## I. Background

Plaintiff Meschele Darden worked as a Leveraged Service Representative for Defendant Southwestern Bell Telephone Company ("SWBTC") at AT&T's Call Center in Kirkwood, Missouri, from September 11, 2009 through January 24, 2014. (Defs.' Statement of Uncontroverted Material Facts ("SUMF") ¶ 1, ECF No. 37) AT&T Corp. was not Plaintiff's employer. (*Id.* at ¶ 2) Plaintiff's job responsibilities included answering calls from customers with questions or concerns about AT&T's products and services. She also helped customers so they would not disconnect their AT&T service, as well as sold additional AT&T products and services. (*Id.* at ¶ 3) Defendant Sharon Hyché ("Hyché") was a Sales Coach and Plaintiff's immediate supervisor from February 2012 until January 24, 2014. (*Id.* at ¶ 4)

On or about August 6, 2013, Plaintiff received a Written Reminder for her behavior in the workplace. (*Id.* at ¶ 5) Plaintiff denied that she was disrespectful toward Hyché. (Pl.'s Response to Defs.' SUMF ¶ 5, ECF No. 44) On August 12, 2013, Darden was placed on a Decision Making Leave (DML) for workplace behavior, but Plaintiff denied that she displayed any unacceptable behavior. (Defs.' SUMF ¶ 6; Pl.'s Response ¶ 6) Plaintiff returned from her DML on August 15, 2013 and committed to doing her job, following her supervisor's directions, and complying with the company's policies. (Defs.' SUMF ¶ 8) Plaintiff took leave under the Family Medical Leave Act ("FMLA") from August 19 to August 23, 2013 and from September 9 to September 16, 2013. (*Id.* at ¶¶ 9-10) While Plaintiff was gone, other employees heard Hyché comment that she would have a big surprise for employees out on FMLA leave when they returned, but she could not let the genie out of the bottle. (Pl.'s Statement of Additional Disputed Material Facts ("SAMF") ¶¶ 15-16, 18, ECF No. 42) One employee sent Plaintiff a text message relaying this information, which prompted Plaintiff to report the comments. (Pl.'s SAMF ¶¶ 23-24) On September 13, 2013, Plaintiff made a complaint through the company's internal hotline about Hyché being unprofessional and untruthful, as well as making comments about employees out on FMLA leave. (Defs.' SUMF ¶ 11; Pl.'s Response ¶ 11)

Human resources conducted an investigation into the matter. (Pl.'s SAMF ¶ 28) Several employees interpreted Hyché's comment to mean that employees using FMLA leave without a good reason would be retaliated against. (*Id.* at ¶¶ 17-19, 33-34, 37-38) However, Hyché denied making such comments. (*Id.* at ¶ 41) Plaintiff indicated in her deposition that other employees, Aisha, Nina, Shontae, and Timothy were retaliated against for using FMLA leave. (Darden Dep. 340:1-9, Pl.'s SAMF Ex. 7, ECF No. 42-7) Plaintiff testified that Aisha, Nina, and Tim took

FMLA leave and were gone not long after, but she did not know the reasons. (*Id.* at 336:6-337:4) She thought they filed charges of discrimination. (*Id.* at 337:5-338:2)

Mark McDonald, a fellow service representative and union steward stated that he witnessed Defendants retaliate against Plaintiff and other employees named Lindsey, Heather, Latasha, as well as some whose names he could not remember, for using FMLA leave. (McDonald Dep. 7:20-8:24, Pl.'s SAMF Ex. 8, ECF No. 42-8) Mr. McDonald did not work under Hyché at any time. (*Id.* at 9:10-11) Lindsey took FMLA leave while working on a different team, was transferred to Hyché's team, and terminated two to three months later. (*Id.* at 17:2-18:18) Heather was not on Hyché's team but was put on DML after she returned for giving a non-canceling customer a promotion. (*Id.* at 21:9-22:11) Mr. McDonald heard about other employees that took leave and then filed a sexual harassment suit against a different manager. (*Id.* at 22:22-26:24) Mr. McDonald was discharged from his job but did not believe the termination was based on his FMLA use. (*Id.* at 19:15-21) Shontae Davis also believed that Hyché retaliated against her for using FMLA leave because Davis' sales objectives were not calculated with the team numbers and because she was pulled into a meeting for not reaching her numbers for the month. (Davis Dep. 12:21-13-4; 20:1-21-7, Pl.'s SAMF Ex. 10, ECF No. 42-10) She was not terminated from her employment as service representative but separated from the company on long-term disability. (*Id.* at 8:11-18)

On September 17, 2013, Plaintiff was asked to have a meeting regarding a Q dialogue. (*Id.* at ¶ 47; Pl.'s SAMF Ex. D, ECF No. 42-4) The Q note indicated that Plaintiff was upset that Hyché did not forward a call Plaintiff was expecting to a lead when Plaintiff was out. (Pl.'s SAMF Ex. D) When Hyché approached Plaintiff, she threw up her hands, refused to talk to

Hyché, and told her that Hyché could not talk to her in an unprofessional manner. (*Id.*) Plaintiff received a DML reminder but nothing more happened to Plaintiff. (Darden Dep. 259:9-13)

In October 2013, Plaintiff called into AT&T's customer service department regarding her personal account. (Pl.'s SAMF ¶ 65) Plaintiff indicated she was having technical problems and was going to disconnect her service. (Hyché Dep. 157:9-158:2, Pl.'s SAMF Ex. 12, ECF No. 42-12) The customer representative asked Hyché to add a 50 percent off retention promotion, which Hyché did, even though she did not recall adding the promotion to Plaintiff's account. (*Id.* at 159:4-160:7) Hyché later investigated the incident and gave Plaintiff a DML reminder; however, Hyché included the event but not the facts in Plaintiff's termination. (*Id.* at 160:16-161:7) In addition, Hyché later removed the promotion because it was not available and was improperly applied to Plaintiff. (*Id.* at 164:14-17)

On November 27, 2013, Plaintiff filed a charge of discrimination against "AT&T, Inc." alleging that Hyché, who is an African American female, was harassing Plaintiff based on her African American race and her sexual orientation. Plaintiff also alleged that Hyché retaliated against Plaintiff for filing grievances through the union. (Defs.' SUMF ¶ 12)

On December 5, 2013, Anita Williams, who worked as a Sales Coach outside the Kirkwood Call Center, forwarded instant messages between Plaintiff and another representative named Don to Hyché and Hyché's supervisor Jeffrey ("B.J.") Taylor ("Taylor"). These Q messages pertained to Plaintiff not receiving credit for an order that Don placed. (*Id.* at ¶ 13) Plaintiff also believed that Don gave the customer false information. (Pl.'s Response ¶ 13) After receiving Williams' email, Hyché investigated by talking with Plaintiff and reviewing the calls and service orders. (Defs.' SUMF ¶ 15) Hyché believed that Plaintiff contacted the customer to have him cancel the order the customer placed with Don. Hyché also believed that Plaintiff had

4

the customer cancel with another representative and then call Plaintiff to reissue the order so Plaintiff could receive the sales credit. Further, Hyché believed Plaintiff gave the customer additional discounts not included in the original order. (*Id.* at ¶ 16) Plaintiff knew that performing a cancel/reissue order without Hyché's permission would be a COBC violation and acknowledged she should have handled the situation differently. (Darden Dep. 310:23-302:6, 305:19-306:5) However, Plaintiff contends that Hyché treated Plaintiff differently than other employees and used this as an opportunity to retaliate against her for using FMLA leave. (Pl.'s Response ¶ 16) Plaintiff stated in her deposition that she was pretty sure Jade Settle never took FMLA leave yet cancelled and reissued orders. (Darden Dep. 349:16-350:5)

Defendant SWBTC has a Code of Business Conduct ("COBC"), on which Plaintiff received training. (Defs.' SUMF ¶¶ 17-180) The COBC states Defendant's employees are committed to the Code; are honest and act with integrity; and apply the code to work every day in an ethical manner. (*Id.* at ¶¶ 19-21) Employees understand that violations of the COBC may result in discipline, including termination of employment. (*Id.* at ¶ 21) Hyché believed that Plaintiff's conduct violated the COBC policy and placed Plaintiff on suspension on December 16, 2013 until General Manager Kevin Gonzalgo ("Gonzalgo") could meet with Plaintiff. (*Id.* at ¶¶ 22-23) Plaintiff believed that Hyché used the COBC as an excuse to terminate Plaintiff's employment in retaliation for Plaintiff using FMLA leave. (Pl.'s Response ¶ 22) Hyché recommended that Plaintiff be discharged for violating the COBC policy. (Defs.' SUMF ¶ 25) On January 23, 2014, Plaintiff and her union representatives met with Gonzalgo, Taylor, and Hyché. (*Id.* at ¶ 26) After meeting with Plaintiff, Taylor agreed with the recommendation to terminate Plaintiff's employment, and Gonzalgo made the final decision to terminate Plaintiff's employment. (*Id.* at ¶¶ 27-28) Gonzalgo was complimentary of Plaintiff, and he indicated that

he had kept an eye on Plaintiff's results but that Plaintiff had not been in the office when he visited, which was disheartening. (Pl.'s SAMF Ex. E, ECF No. 42-5) On January 24, 2014, Plaintiff's employment with SWBTC ended. (Defs.' SUMF ¶ 29) At that time, the supervisors were unaware that Plaintiff filed a charge of discrimination in November 2013, although human resources knew of Plaintiff's intent to file the charge. (Defs.' SUMF ¶ 30; Pl.'s Response ¶ 30)

On March 18, 2014, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR") stating that she was discharged in retaliation for filing a charge of discrimination. (Pet. Ex. B, ECF No. 4-2) She received her Notice of Right to Sue from the MCHR on April 17, 2014. (Pet. Ex. C, ECF No. 4-3) On May 7, 2014, Plaintiff filed a Petition for Damages in the Circuit Court of St. Louis County, Missouri, alleging retaliation in violation of the Missouri Human Rights Act ("MHRA") against Defendant AT&T Corp. (Count I); retaliation in violation of the FMLA against AT&T Corp. (Count II); retaliation in violation of the FMLA against Sharon Hyché (Count III); retaliation in violation of the MHRA against SWBTC (Count IV); and retaliation in violation of the FMLA against SWBTC (Count V).

On July 15, 2015, Defendants filed Motion for Summary Judgment arguing that AT&T Corp. should be dismissed because it was not Plaintiff's employer; Plaintiff's FMLA retaliation claim fails as a matter of law because Plaintiff is unable to present direct or indirect evidence to support her claim; and Plaintiff's MHRA retaliation claim fails as a matter of law because Plaintiff is unable to demonstrate a causal relationship between filing her charge of discrimination and her discharge. Plaintiff responds that a genuine issue of material fact exists as to whether Plaintiff can show direct discrimination or that Defendants' stated reason for terminating Plaintiff's employment was a pretext for discrimination.

## II. Legal Standards

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court show "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 775 (8th Cir. 1995).

The moving party has the initial burden to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.,* 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ .P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). In fact, the non-moving party must present sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. Self-serving, conclusory statements, standing alone, are insufficient to defeat a well-supported motion for summary judgment. *O'Bryan v. KTIV Television,* 64 F.3d 1188, 1191 (8th

Cir. 1995). "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (citation omitted).

### III. Discussion

#### A. Claims Against AT&T Corp.

Defendant asserts that AT&T Corp. was not Plaintiff's employer. (Defs.' SUMF ¶ 2) Not only did Plaintiff admit to this fact in her response to Defendant's Statement of Uncontroverted Material Facts, but Plaintiff's attorney acknowledged during Plaintiff's deposition that the parties agreed to stipulate that SWBTC is the proper employer, not AT&T. (Pl.'s Response ¶ 2; Darden Dep. 48:3-10) In addition, Plaintiff's attorney stated his intent to dismiss AT&T from the case without prejudice. (Darden Dep. 48:8-11) However, Plaintiff has not filed any voluntary dismissal. The Court finds that Plaintiff was not employed by AT&T and, as will be explained below, will dismiss AT&T with prejudice as to Plaintiff's FMLA retaliation claim (Count II) and without prejudice as to the MHRA claim (Count I).

#### B. Plaintiff's FMLA Retaliation Claim

Plaintiff claims that Defendants retaliated against her for using FMLA leave by disciplining her and ultimately terminating her employment. Defendants argue that Plaintiff is unable to establish an FMLA retaliation claim either by producing direct evidence or under the burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

"A discrimination claim 'arises when an employer takes adverse action against an employee because the employee exercises rights to which [s]he is entitled under the FMLA.'" *Hudson v. Tyson Fresh Meats, Inc.*, 787 F.3d 861, 866 (8th Cir. 2015) (quoting *Pulczinski v.*

8

*Trinity Structural Towers, Inc.*, 691 F.3d 996, 1006 (8th Cir. 2012)). "Taking FMLA leave, however, does not give an employee any greater protection against termination for reasons unrelated to the FMLA than was available before." *Malloy v. U.S. Postal Serv.*, 756 F.3d 1088, 1090 (8th Cir. 2014) (citation omitted). In order to avoid summary judgment, Plaintiff must present sufficient evidence for a jury to find that Defendants' decision to terminate her employment was motivated by her exercise of FMLA rights. *Id.*

A plaintiff may establish discrimination by introducing direct or indirect evidence. *Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 924 (8th Cir. 2014). "Direct evidence reveals a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Id.* (citation omitted). "Direct evidence must be strong and clearly point to an illegal motive as the basis for the adverse employment action." *Id.* (citation omitted).

Plaintiff contends that Hyché's alleged remark that she had something for those out on FMLA leave is direct evidence that Defendants' discriminated and retaliated against Plaintiff by firing her for taking leave under the FMLA. Defendants, on the other hand, argue that Hyché's comment is not direct evidence of retaliatory motive because it was nothing more than a stray remark made outside the decision making process. "'[S]tray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process' are not direct evidence." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 902 (8th Cir. 2015) (quoting *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933).

Plaintiff asserts, however, that the fact Hyché disciplined her the day Plaintiff returned from FMLA leave and just a few days after Hyché made the remark demonstrates retaliation. However, the adverse action about which Plaintiff complains is her suspension three months

9

after the remark and termination four months after, not disciplinary reminders given during the four month interval. The gap in in time and lack of connection between Hyché's comments regarding employees on FMLA leave and Defendant's decision to terminate Plaintiff's employment negate Plaintiff's argument that the remark constitutes direct evidence of Defendants' discriminatory motive for her termination. *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 954 (8th Cir. 2012) (finding comments made six months before decision to discharge plaintiff was not connected to defendant's decision); *see also Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1153 (8th Cir. 2007) (holding that stray comments were not related to the decision making process because the most recent comment occurred four months before plaintiff's termination).

Further, what Hyché meant by her comment requires an inference because she does not name Plaintiff specifically, nor does she mention what action she planned to take. *Ramlet*, 507 F.3d at 1153. Indeed, Plaintiff acknowledges that the employees that overheard the remark generally interpreted the comment as a threat of retaliation, but were not sure what Hyché meant. Therefore, the Court finds that standing alone, Hyché's comment is not sufficient to constitute direct evidence that Plaintiff taking FMLA leave actually motivated her termination. *Id.*; *see also Wagner v. Gallup, Inc.*, 788 F.3d 877, 885 (8th Cir. 2015) (finding perception of other employees that Defendant had a pattern of pushing out older employees was anecdotal and "[fell] short of demonstrating a specific link between a discriminatory bias and [plaintiff's] termination sufficient to support a finding by a rational trier of fact that the bias motivated the action under the direct method). Thus, to succeed on her FMLA retaliation claim, Plaintiff must create an inference of unlawful discrimination under the burden-shifting framework of *McDonnell*

10

*Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *Sisk v. Picture People, Inc.*, 669 F.3d 896, 899 (8th Cir. 2012).

"To establish a prima facie case of FMLA discrimination, an employee must show: (1) that [s]he engaged in activity protected under the Act, (2) that [s]he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action." *Pulczinski*, 691 F.3d at 1007 (citation omitted). "If the employee establishes a prima facie case, 'the burden shifts to the [employer] to articulate a legitimate, nondiscriminatory reason for its challenged actions.'" *Hudson*, 787 F.3d at 866 (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)). "The employee may then demonstrate that the proffered reason is pretextual, showing that 'the employer's proffered explanation is unworthy of credence' or 'persuading the court that a prohibited reason more likely motivated the employer.'" *Id.* (quoting *Stallings,* 447 F.3d at 1051). Where an employer bases its decision on an "honestly-held" belief that is unrelated to the plaintiff's exercise of FMLA rights, the decision is non-discriminatory even if that belief is mistaken. *Id.* (citation omitted).

In the instant case, the Court finds that Plaintiff is unable to establish a prima facie case of discrimination under the FMLA. Although Plaintiff has shown that she engaged in protected activity under the FMLA and that she suffered an adverse employment action, she has not shown a causal connection between taking FMLA leave and her termination. Plaintiff relies on Hyché's remark that she had a surprise for employees on FMLA leave made in September, 2013 as evidence that Plaintiff's termination in January, 2014 was connected to Plaintiff taking FMLA leave. Plaintiff also mentions meeting notes indicating that Kevin Gonzalgo, who fired Plaintiff, stated that he kept an eye on her work results and was disheartened when he came to visit and

11

she was not in the office. It is a stretch to conclude that Mr. Gonzalgo was specifically referring to Plaintiff using FMLA leave, as opposed to being disheartened because her sales numbers were down. Further, as stated above, the four month gap between her last FMLA use and her termination is too long to establish a causal connection.

While Plaintiff attempts to use the DML reminder and the investigation into her call to the Call Center for a promotion on her personal AT&T account, these incidents were not adverse employment actions that caused a tangible change in her working conditions. *Musolf v. J.C. Penney Co., Inc.*, 773 F.3d 916, 920 n.3 (8th Cir. 2014) (finding that a meeting discussing complaints against the plaintiff was not and adverse employment action because there was no tangible change in work conditions which produced a material employment disadvantage) (citation and internal quotations omitted)). Indeed, she was not disciplined in any way for these incidents. Further, Plaintiff received her initial written reminder and DML before she took any leave. *See Brown v. City of Jacksonville*, 711 F.3d 883, 891 (8th Cir. 2013) (finding plaintiff failed to make a prima facie case where supervisors communicated with her about her unsatisfactory performance before she took FMLA leave).

Assuming, *arguendo*, that Plaintiff could make a prima facie case of FMLA discrimination, Plaintiff is unable to demonstrate that Defendants' reason for terminating her employment, violating COBC policy, was a pretext for FMLA discrimination. Here, Defendants stated the reason for Plaintiff's termination was violating the COBC policy with regard to canceling and reissuing orders. The Eighth Circuit has "consistently held that violating a company policy is a legitimate, non-discriminatory rationale for terminating an employee." *Twymon*, 462 F.3d at 935. Plaintiff acknowledged that she sent a customer back into queue to cancel with another representative and then had the customer reorder through Plaintiff, with

additional discounts and waived charges, which was a COBC violation. (Darden Dep. 313:12-315:21, 318:13-18)

Because Defendants have established a legitimate, non-discriminatory reason for Plaintiff's termination, Plaintiff must prove by a preponderance of the evidence that the stated reason for her termination was a pretext for discrimination. *Id.* "To show pretext, the plaintiff must demonstrate more than at the prima facie stage because, at the pretext stage, the evidence is viewed in light of the employer's justification." *Ebersole*, 758 F.3d at 925 (citation omitted). Plaintiff "may demonstrate pretext by 'showing that the employer's proffered explanation is unworthy of credence or persuading the court that a prohibited reason more likely motivated the employer.'" *Burciaga v. Ravago Americas LLC*, 791 F.3d 930, 935 (8th Cir. 2015) (quoting *Hudson*, 787 F.3d at 866).

Here, Plaintiff argues that Defendants applied the COBC policy inconsistently and more favorably toward those employees that did not use FMLA. Plaintiff asserts that it was known in the office that employees could cancel orders and reissue them to get the sales credit. Plaintiff also stated she was pretty sure another employee that did not take FMLA leave, Jade Settle, was allowed to cancel and reissue orders with no repercussions. "In order to rely on similarly-situated evidence, an employee 'must prove only that the other employees were similarly situated in all relevant respects.'" *Id.* (quoting *Ridout v. JBS USA, LLC,* 716 F.3d 1079, 1085 (8th Cir. 2013). "To be similarly situated, 'the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 994 (8th Cir. 2011) (quoting *Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 479 (8th Cir. 2004)). Although the other employees "need not have committed the exact same

13

offense [they] must have engaged in conduct 'of comparable seriousness.'" *Ebersole*, 758 F.3d at 925 (quoting *Burton v. Ark. Sec'y of State*, 737 F.3d 1219, 1231 (8th Cir. 2013)).

After reviewing the evidence, the Court finds that Plaintiff is unable to demonstrate that Defendants' proffered reason for Plaintiff's termination was a pretext for unlawful discrimination. Plaintiff's evidence does not establish that fellow employees were similarly situated to her. First, there is no evidence that other employees had a written reminder and a DML yet were not terminated for having another representative cancel the order and then reissuing the order him or herself. *See Fatemi v. White*, 775 F.3d 1022, 1044 (8th Cir. 2015) (finding that while the law does not require the comparator to be a clone, the law does require the misconduct of the more favorably treated employees to be of comparable seriousness) (citation omitted)). Plaintiff acknowledged that she should have done the cancelation and the reissue herself, instead of sending the cancelation to another representative. Further, Plaintiff presents insufficient evidence that employees that did not take FMLA leave were treated more favorably than those taking FMLA leave. Her only evidence is her self-serving statement that she was pretty sure another employee that did not take FMLA leave performed a cancel/reissue with no repercussions. This does not establish a genuine issue of material fact that Defendants treated non-FMLA employees more favorably than those using FMLA leave. *See, e.g., Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 857 (8th Cir. 2012) ("A party's unsupported self-serving allegation that her employer's decision was based on retaliation does not establish a genuine issue of material fact.") (quotation and citation omitted)).

Further, Plaintiff's reliance on *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858 (8th Cir. 2006) is misplaced. In that case, a jury returned a verdict in favor of the plaintiff where the plaintiff's supervisor reacted negatively to plaintiff's use of FMLA leave and questioned whether she was

14

really sick. *Id.* at 862. The supervisor also mentioned to the plaintiff that her production levels would be called into question because of her absences, and he complained regularly to Vermeer's human resources manager and the FMLA coordinator about plaintiff's use of leave. *Id.* Furthermore, the supervisor routinely transferred plaintiff to different machines and told her that he would permanently remove her from the machine she typically operated if she continued to use FMLA leave. *Id.* The plaintiff complained that her supervisor treated her differently than other employees by citing her for minor violations not commonly used with other employees. *Id.* at 863. Former employees testified at trial that they began having disciplinary problems and experiencing adverse employment actions after using FMLA leave. *Id.* The Eighth Circuit affirmed the district court's finding that sufficient evidence of FMLA retaliation existed to support the jury verdict. *Id.* at 868. The court relied on the plaintiff's evidence of pretext stemming from other employees' testimony that Vermeer employees were not punished for plaintiff's infraction and that they had personally experienced retaliation for taking FMLA leave. *Id.*

In the instant case, Defendants did not make explicit remarks about retaliating against Plaintiff or any other employee taking FMLA leave. Defendants made no threats, nor did Defendants take any disciplinary action against Plaintiff or other employees for taking FMLA leave. Shontae Davis stated that she voluntarily separated from the company, and Mark McDonald did not believe his termination stemmed from his use of FMLA leave. Other alleged retaliation against other employees was hearsay, and most named employees did not have Hyché as a supervisor. Finally, Plaintiff presents no evidence that non-FMLA employees were not disciplined for the same offenses committed by employees taking FMLA leave. *See Ebersole*, 758 F.3d at 927 (distinguishing *Hite* based on the supervisor's explicit references to plaintiff's

15

use of FMLA leave, punishment for taking leave, and threats to terminate employment if plaintiff continued to take FMLA leave). While Plaintiff attempts to equate a her infraction with cancel/reissue orders, the steps she took, to have another representative cancel the customer's order and then to reissue the order herself with additional discounts, were not the same actions taken by other employees.

The Court notes that "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 812 (8th Cir. 2005) (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994) (internal quotations omitted)). The Court may not consider whether Defendants were unduly harsh in its treatment of Plaintiff. *Id.* The sole question is whether there is a genuine issue for trial as to whether Defendants terminated Plaintiff's employment because she took leave under the FMLA. *Id.* The Court finds that Plaintiff has failed to produce sufficient evidence demonstrating a genuine issue of material fact that her termination was the result of FMLA retaliation and not a legitimate business reason. Therefore, summary judgment in favor of Defendants is warranted.[1]

### C. Plaintiff's MHRA Retaliation Claim

Plaintiff also contends that the Defendants retaliated against her for filing an MHRA claim. Defendant asserts that they are entitled to summary judgment because Plaintiff has failed to present evidence establishing a causal relationship between filing her charge of discrimination and her termination. The Court acknowledges the Eighth Circuit case law that instructs lower courts to dismiss the MHRA claims without prejudice to allow the courts of Missouri to decide rather than exercise supplemental jurisdiction. *See Murphy v. St. Louis Univ.*, 450 Fed. App'x

---

[1] Because Defendants are entitled to judgment as a matter of law on Plaintiff's FMLA claims, the Court will dismiss AT&T, an improper party, with prejudice.

16

552, 553 (8th Cir. 2012) (finding district court should have dismissed the MHRA claims rather than address them on the merits because the court was uncertain how Missouri courts would view the claims); *EEOC v. Con-Way Freight, Inc.*, 622 F.3d 933, 938 (8th Cir. 2010) (noting that the MHRA safeguards were not identical to federal standards and could offer greater discrimination protection, thus finding the better course was to allow the state courts to decide the merit of plaintiff's MHRA claims). In those and other comparable cases, the court's jurisdiction was based on supplemental jurisdiction and not diversity of citizenship. *Trickey v. Kaman Indus. Techs. Corp.*, No. 1:09-cv-00026-SNLJ, 2011 WL 2118578, at *6 (E.D. Mo. May 26, 2011).

Similarly, this Court's jurisdiction over Plaintiff's MHRA claims is supplemental, not based on diversity. (Notice of Removal ¶ 9, ECF No. 1) Thus, the Court will decline to exercise supplemental jurisdiction over Plaintiff's MHRA retaliation claims and will dismiss the claims without prejudice. *Dickey v. Lou Fusz Auto. Network, Inc.*, No. 4:10-CV-1818 (CEJ), 2012 WL 162408, at *6 (E.D. Mo. Jan. 19, 2012).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 35) is **GRANTED** as to Counts III and V pertaining to Plaintiff's claims under the Family Medical Leave Act.

**IT IS FURTHER ORDERED** that Count II against AT&T Corp. is **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's state law claims under the MHRA, Counts I and IV are **DISMISSED without prejudice.** A separate Judgment will accompany this Memorandum and Order.

Dated this 14th day of January, 2016.

/s/ Ronnie L. White
RONNIE L. WHITE
**UNITED STATES DISTRICT JUDGE**